UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALLASIA LANGSTON | : |
| | : |
| v. | : Case No. 3:19-CV-2020 (MPS) |
| | : |
| UNITED STATES OF AMERICA, | : |

**DEFENDANT'S 56(a)1 STATEMENT**

Pursuant to Local Rule 56(a)1 of the Local Rules of Civil Procedure for the District of Connecticut, Defendant, United States of America ("Defendant"), through its undersigned counsel, hereby respectfully submits the following undisputed material facts in support of its motion for summary judgment:

1. The United States Postal Service operates a full-service post office located at 120 Middle Street, Bridgeport, CT ("Post Office"). Declaration of Orlando Giddiens dated February 18, 2021, attached hereto as Exhibit A, at ¶ 4.

2. The Post office is located in an historic building and has terrazzo floors in the lobby area. Ex. A at ¶ 5.

3. The Post Office has two customer entrances, one on the north side of the building and one on the south side of the building. Ex. A at ¶ 6.

4. When facing the Post Office, the entrance on the north side of the building is known as the Golden Hill Street entrance. Ex. A at ¶ 7; Deposition transcript of Allasia Langston taken on October 6, 2020, at p. p. 39:16 – 40:3, attached hereto as Exhibit B.

5. Plaintiff testified that she entered the Golden Hill Street entrance on January 13, 2018. Ex. B at pp. 39:16 – 40:3.

6. The Golden Hill Street entrance to the Post Office has stairs leading from the sidewalk to the outside doors of the Post Office, and there are marble pillars located on each side of these stairs. Photographs of the Bridgeport Post Office, attached hereto as Exhibit C, at pp. 8-10; Ex. B at pp. 44:13 – 45:2.

7. The pillars on each side of the stairs leading into the Bridgeport Post Office have yellow caution signs affixed to them stating "CAUTION SLIPPERY WHEN WET." Ex. C at pp. 8-10; Deposition Transcript of Orlando Giddiens taken on September 30, 2020, attached hereto as Exhibit D, at pp. 32:15-21, 39:6-18; Deposition Transcript of Jonathan Duberry, taken on September 30, 2020, attached hereto as Exhibit E, at p. 16:15-22.

8. These yellow caution signs were present on the pillars on the side of the stairs at each entrance leading into the Post Office on January 13, 2018. Ex. D at pp. 32:19-21, 39:13-18; Ex. E at p. 16:17-22.

9. Upon opening the outside doors at the Golden Hill Street entrance, customers enter a vestibule area which leads to another set of doors to the main lobby. Ex. A at ¶ 8; Ex. C at 6, 10-11; Ex. B at p. 52:11-25.

10. Blue floor rugs are located in the vestibule area all year long. Ex. D at pp. 18:17-20; Ex. E at p. 20:14-16; Ex. C at p. 11.

11. During the winter months, additional runners are placed in the vestibule area. Ex. D at pp. 18:13 – 20:6, 32:2-5, 36:2-19; Ex. E at pp. 18:24 – 19:9, 19:20 – 20:18, 24:3-18.

12. These additional runners are typically placed in the vestibule area around November and remain until sometime in the early Spring. Ex. D at pp. 18:22 – 20:6, 36:2-19; Ex. E at pp. 18:24 – 19:9, 24:3-18.

13. There are a second set of doors in the vestibule area which lead directly into the lobby. Ex. C at p. 11.

14. There are additional floor rugs on the lobby floor directly in front of each doorway. Ex. D at p. 18:13-20; Ex. E at p. 20:9-14; Ex. C at pp. 5-6.

15. When the weather gets bad, additional runners are also placed in the lobby such as in front of the P.O. boxes; along the other walkway where customers walk; and at angles off of the rugs located at the entranceways. Ex. D at pp. 19:12 – 20:6.

16. The Post Office contracts with a company named Sintas to come to the Post Office every two weeks to pick up the floor rugs for cleaning and to place down clean rugs. Ex. D at p. 19:3-11, Ex. E at p. 20:14-18.

17. The less expensive runners are discarded and replaced with new runners by Postal maintenance workers as needed. Ex. E. pp. 19:20 – 20:8, 24:3-18.

18. In addition to the floor rugs and runners, two four-foot yellow caution cones, which state in both English and Spanish "CAUTION" "WET FLOOR," are kept by the lobby entrances year-round. Exhibit D at pp. 21:2-18, 32:6-14, 35:14-16; Ex. E at p. 11:14-17; Ex. C at 5.

19. During winter months, at least eight additional caution signs are placed throughout the lobby. Ex. D at pp. 27:8-12, 32:2-5, 34:9-16; Ex. E at p. 11:1-23.

20. During the winter months, floor fans are also used in the lobby to keep the lobby floor dry. Ex. D at p. 30:16-25; Ex. C at p. 7.

21. The Post Office opens at 6:00 a.m. so that its customers can have access to their P.O. boxes. Ex. D at p. 12:14-16.

22. The Post Office service counter opens at approximately 8:15 a.m. Ex. D at p. 12:17-19.

23. On Saturday, the Post Office closes at 1:30 p.m. Ex. D at p. 12:18-19.

24. In January of 2018, there were six maintenance workers employed at the Post Office. Ex. D at p. 10:14-21.

25. In 2018, there were typically three custodians who worked staggering shifts each day.  Ex. D at pp. 11:22 – 12:9.

26. The first custodian began work at 4:00 a.m. to ensure that the lobby was cleaned before the doors opened to the public at 6:00 a.m.  Ex. D at p. 13:1-4.

27. Jonathan Duberry has been employed by the United States Postal Service as a custodian for over 32 years.  Ex. E at p. 5:14-15.

28. Mr. Duberry works Monday through Saturday and is the custodian who worked on January 13, 2018.  Ex. D at p. 13:8-14; Ex. E at p. 7:8-9.

29. On Saturday, January 18, 2013, Mr. Duberry began work at 4:00 a.m. and worked until 12:30 p.m.  Ex. E at pp. 7:16-18, 9:21-22.

30. Mr. Duberry was the primary person responsible for checking the lobby throughout the day to ensure everything was clean.  Ex. D at pp. 15:17 - 17:6; Ex. E at pp 7:21 – 8:11, 10:15-24.

31. Mr. Duberry started his workday by cleaning the lobby which included wiping down the tables, sweeping, mopping, and walking around the lobby area looking for debris on the floor.  Ex. E at pp. 7:21-23, 10:21-24.

32. In January of 2018, Mr. Duberry would walk the lobby and check for debris every 15 minutes if there was inclement weather and every half hour if the weather was good.  Ex. E at pp. 10:15-25, 23:14 – 24:2; Ex. D at pp. 15:1 – 17:6.

33. In between inspections of the lobby, Mr. Duberry engaged in other custodial duties in the lobby such as cleaning the floor, emptying the garbage, and sweeping.  Ex. E at p. 10:21-24.

34. Between 12:15 and 12:20 p.m., just prior to the end of his shift, Jonathan Duberry conducted one final check of the lobby floor.  Ex. E at pp. 22:14 – 23:7; Ex. D at pp. 14:19 – 15:6.

35. If Mr. Duberry saw something on the lobby floor at 12:15 or 12:20 p.m., he would clean it up before leaving for the day even if it took him beyond the end of his shift at 12:30.  Ex. E at p. 23:2-7.

36. If an employee sees something on the ground, they are required to call the custodian over the intercom system so a custodian can come clean the area.  Ex. E at pp. 14:13-24, 15:3-8; Deposition Transcript of Annette Perez, taken on January 27, 2021, attached hereto as Ex. F, at pp. 13:14 – 16:15, 21:2-3.

37. Everyone in the building can hear messages delivered over the intercom system.  Ex. E at p. 15:3-8.

38. A search of all records at the Post Office indicates that no complaints were made at any time on January 13, 2018, regarding a fall on the lobby.  Ex. A at 10.

39. Plaintiff had been to the Post Office on many occasions in the past and had, at one time, maintained a post office box at the Post Office.  Ex. B at pp. 40:22 – 41:17.

40. On Saturday, January 13, 2018, Plaintiff left her house around 12:00 p.m., or somewhere in the 12 o'clock hour, and drove to the Post Office to mail something.  Ex. B at pp. 36:14-15; 38:8-13.

41. Plaintiff does not recall any snowfall that day and does not remember if there was any rainfall.  Ex. B at pp. 35:20-23, 43:4-6.

42. Plaintiff arrived at the Post Office between 12:00 and 12:30 p.m. and entered the Post Office thru the north end entrance which is also known as the Golden Hill Street entrance.  Ex. B at pp. 39:16 – 40:3, 56:9-14.

43. Plaintiff was accompanied by her minor daughter who was walking in front of her. Ex. B at pp. 36:16-17, 51:18-20.

44. Plaintiff does not remember seeing the two yellow caution signs located on the pillars adjacent to the stairs leading to the Golden Hill Street entrance of the Post Office.  Ex. B at pp. 44:13 – 45:4.

45. Although unsure, Plaintiff believes she would have used the right-hand, outside door to enter the Postal Office vestibule area.  Ex. B at pp. 51:21 – 52:8.

46. Plaintiff entered the vestibule but does not remember the floor mats that were present in the vestibule area.  Ex. B at pp. 52:11 – 53:3.

47. Plaintiff does not remember if there were additional runner mats in the vestibule area.  Ex. B at p. 53:4-7.

48. Plaintiff does not remember if she saw water or debris on the floor in the vestibule area and does not remember slipping in the vestibule area.  Ex. B at pp. 53:8-21, 54:12-14.

49.  Plaintiff testified that she just did not "remember what the floor was looking like." Ex. B at p. 53:15-16.

50. Plaintiff does not recall whether she opened the right-hand or left-hand door in the vestibule area to enter the lobby.  Ex. B at pp. 53:22 – 54:3.

51. Plaintiff does not remember if there were mats on the lobby floor at entrance doors and does not remember if there were runner mats on the lobby floor.  Ex. B at p. 54:4-11.

52. Plaintiff does not remember if she saw any debris on the floor or mats when she entered the lobby area.  Ex. B at p. 54:15-17.

53. Plaintiff does not remember seeing the four-foot caution cone located in the lobby at the entrance doorway and does not know if there were other caution signs throughout the lobby. Ex. B at p. 56:15-20; Ex. C at pp. 5-6.

54. Plaintiff proceeded to her right towards the full-service counter to mail a package. Ex. B at pp. 57:1-4, 59:13-15; Ex. C at p. 5.

55. Plaintiff claims she fell either near the first table in the lobby or in between the first and second table in the lobby.  Ex. B at pp. 57:6 – 64:9; Ex. C at p. 5.

56. Plaintiff does not remember if she saw any water on the floor prior to her fall.  Ex. B at p. 65:15-18, 67:20-22.

57. Plaintiff claims that, after she fell, she saw water on the floor, approximately the size of a pizza.  Ex. B at p. 67:8-19.

58. Plaintiff does not know how the water got on the lobby floor.  Ex. B at p. 109:15-17.

59. Plaintiff does not know how long the water was on the lobby floor prior to her fall. Ex. B at pp. 65:23-25, 109:2-4.

60. Plaintiff does not have any evidence that a Postal employee knew there was water on the lobby floor prior to her fall.  Ex. B at pp. 66:1-4, 74:3-5, 106:24 – 108:19, 109:9-14.

61. Plaintiff testified that three female Postal employees saw her fall but no one approached her.  Ex. B at p. 69:5 – 73:8.

62. Plaintiff claims that one of the employees who saw her fall was a counter clerk who was working behind the counter.  Ex. B at p. 69:5-6.

63. Annette Perez was working behind the service counter on January 13, 2018 but did not see Plaintiff fall.  Deposition Transcript of Annette Perez, taken January 27, 2021, attached hereto as Exhibit F, at pp. 9:3-16, 11:17-23, 12:4-6.

64. Ms. Perez testified that she believed the service counter had been relocated in late 2017 to the same side as the post office boxes, and the service counter was closer to the south-side entrance to the Post Office.  Ex. F at pp. 10:11 – 11:12.

7

65. Ms. Perez testified that, from this location, she would not be able to see the north side Golden Hill Street entrance or the area near the first and second tables from the Golden Hill Street entrance. Ex. F at pp. 26:5-14.

66. Ms. Perez also testified that, even if the service counter had not been relocated by January 2018, she would not have been able to see the Golden Hill Street entrance or the area near the first and second tables from the Golden Hill Street entrance from behind the service counter. Ex. F at pp. 25:7 – 26:3.

67. Plaintiff also testified that there was a "good amount" of customers in line at the Post Office but does not remember any customer talking to her or approaching her and asking if she was okay. Ex. B at pp. 74:13 – 75:6.

68. After getting up from her fall, Plaintiff claims that she proceeded to the full-service counter to mail her package. Ex. B at p. 75:7-17.

69. Plaintiff testified that she did not tell anyone at the full-service counter that there was water on the floor or that she fell. Ex. B at pp. 75:22 – 76:13.

70. After falling, Plaintiff did not tell any Postal employee that there was water on the lobby floor near the first table from the Golden Hill Street entrance nor did she tell any Postal employee that she fell. Ex. B at p. 73:25 – 74:12, 75:22 – 76:13; Declaration of United States Postal Attorney Helen Grant, attached hereto as Exhibit P, at ¶¶ 5-14.

71. Plaintiff did not ask anyone for assistance or medical care. Ex. B at pp. 70:15-18, 73:25 – 76:13.

72. Plaintiff did not fill out an incident report on January 13, 2018 and never went back to the Post Office to fill out an incident report. Ex. B. at p. 74:6-12.

73. The day after her fall, Plaintiff went to St. Vincent's Urgent Care complaining of back and neck pain. Ex. B at p. 79:9-20.

74. Plaintiff did not seek any subsequent treatment until August 2018, approximately eight months after her alleged fall.  Ex. B at p. 82:17-19.

75. The United States Postal Service first learned of Plaintiff's alleged fall when it received an August 20, 2018, letter from Plaintiff's counsel to the Torts Claim Section advising that his firm "represent[ed] [Plaintiff] concerning injuries she sustained when she slipped and fell on January 13, 2018 at the United States Post Office located at 120 Middle Street, Bridgeport, CT 06602."  Declaration of Jacqueline D. Slay, Operations Support Specialist, attached hereto as Exhibit G, at ¶¶ 4-6; Ex. A at ¶ 10; Declaration of Lawrence McLeain, Supervisor of Customer Services, attached hereto as Exhibit N, at ¶ 4; Declaration of Postmaster Gary Thompson, attached here as Exhibit O, at ¶ 3.

76. The August 20, 2018, letter did not reference any previous correspondence sent by Plaintiff's counsel's firm to the Bridgeport States Post Office.  *See* August 20, 2018, letter attached hereto as Exhibit H.

77. On June 24, 2019, Plaintiff's attorney filed an administrative claim (SF-95) with the United States Postal Service District Tort Claims Coordinator on Plaintiff's behalf.  SF-95 Notice of Claim attached hereto as Exhibit I.

78. On January 13, 2020, this claim was denied by the Postal Service.  Letter of denial attached hereto as Exhibit J.

79. Plaintiff claims to have mailed a letter, dated January 26, 2018, to the "Manager" of the Post Office advising them that Plaintiff fell and requesting that evidence be preserved.  January 26, 2018 letter attached hereto as Exhibit K.

80. Attorney David Scully submitted an Affidavit stating that it was his practice to send letters of representation to property owners against whom his firm intended to bring a claim.  Affidavit of Attorney David Scully, attached hereto as Exhibit L at ¶ 6.

81. After signing letters drafted for his signature, Attorney Scully declared that the office staff seals the letter in the envelope, stamps the envelope and places the letter in a mailbox on Grand Street in Waterbury, Connecticut.  Ex. L at ¶ 9.

82. Attorney David Scully does not declare that he is the individual who mailed the January 26, 2018, letter at issue nor does he state that a specific, named employee did so.  *See* Ex. L.

83. Attorney David Scully also does not offer any evidence that the Bridgeport Post Office did, in fact, receive his January 26, 2018, letter.  *See* Ex. L.

84. Paralegal Shanequa Camp submitted an Affidavit stating that it was her practice to type letters and accompanying envelopes for Attorney David Scully to sign.  Declaration of Shanequa Camp, attached hereto as Exhibit M, at ¶ 6.

85. Once Attorney Scully signed the letter, Ms. Camp stated she would use a postage machine to stamp the letter and place it in a metal bin next to the postage machine to be mailed that day.  Ex. M at ¶ 7.

86. Ms. Camp does not declare that she was the individual who mailed the letter at issue nor does she identify a specific employee who did so.  *See* Ex. M.

87. Ms. Camp does not offer any evidence that the Post Office did, in fact, receive the letter allegedly mailed January 26, 2018.  *See* Ex. M.

88. Postmaster Gary Thompson was the lead manager for the Bridgeport Post Office on January 13, 2018.  Ex. O at ¶ 5.

89. Any correspondence addressed to the "Manager" of the Post Office would be directed to Postmaster Thompson.  Ex. O at ¶ 5; Ex. N at ¶ 6; Ex. A at ¶ 13.

90. It is standard procedure that any correspondence received by the Postmaster's Office regarding maintenance issues, video recordings made at the Post Office, incidents that occurred

in the lobby area, and matters related to custodial staff are forwarded to Orlando Giddiens for attention and appropriate action. Ex. O at ¶ 5; Ex. N at ¶ 7; Ex. A at ¶¶ 14-15.

91. Postmaster Thompson did not receive a copy of the letter dated January 26, 2018, which Plaintiff's counsel claims was sent to the "Manager" of the Post Office and learned of this letter approximately two years later when it was shown to him by a Postal Service Attorney. Ex. O at ¶ 4.

92. Lawrence McLeain was the Acting Manager, Customer Service Support at the Bridgeport, Connecticut Post Office in January 2018. Ex. N at ¶ 2.

93. In Mr. McLeain's capacity as the Acting Manager of Customer Service Support, Orlando Giddiens, the Supervisor of Maintenance Operations, reported to him. Ex. N at ¶ 2.

94. Mr. McClean did not receive a copy of the letter dated January 26, 2018, which Plaintiff claims was sent to the "Manager" of the Post Office and learned of this letter approximately two years later when it was shown to him by a Postal Service Attorney. Ex. N at ¶ 5.

95. Orlando Giddiens, the Supervisor of Maintenance Operations, did not receive a copy of the letter dated January 26, 2018, that Plaintiff claims was sent to the "Manager" of the Post Office shortly after the alleged fall and first learned of this letter when it was shown to him by an attorney with the United States Postal Service's Law Department after the complaint in this case was filed with the Court. Ex. A at ¶¶ 1, 12.

96. In his capacity as the Supervisor of Maintenance Operations, Orlando Giddiens is responsible for the video camera system that is used to record video of activity in the customer access area of the Bridgeport Post Office. Ex. A at ¶ 19.

97. The video system at the Bridgeport Post Office is automatically set to record each day for 30 consecutive calendar days.  After 30 days, the earliest/oldest date of video recordings on the system is automatically deleted.  Ex. A at ¶ 19.

98. As Mr. Giddiens was unaware of the alleged fall on January 13, 2018, he did not download the video for January 13, 2018.  Ex. A at ¶ 20.

99. As Mr. Giddiens was unaware of the alleged fall on January 13, 2018, the video for that day was automatically deleted on February 12, 2018, in accordance with normal operating procedures.  Ex. A at ¶¶ 20-21.

100. Had Mr. Giddiens received the January 26, 2018, allegedly sent from Plaintiff's counsel he would have ensured that the video recordings for that day were downloaded and saved.  Ex. A at ¶ 21.

101. When interviewed, all female employees working at the Bridgeport Post Office on January 13, 2018, denied seeing anyone fall in the lobby that day and all indicated that, if they had seen someone fall, they would have provided assistance.  Ex. P at ¶¶ 9-14.

    Respectfully submitted,

    Defendant
    By Its Attorneys

    John H. Durham
    United States Attorney

    _____/s/_____
    Michelle L. McConaghy
    Assistant United States Attorney
    157 Church Street, 23rd Floor
    New Haven, CT 06510
    Telephone:  (203) 821-3700
    Facsimile:   (203) 773-5373

## CERTIFICATION OF SERVICE

      I hereby certify that on February 22, 2021, a copy of the foregoing Defendant's Rule 56(a)1 Statement was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                /s/
                                     Michelle L. McConaghy
                                     Assistant U.S. Attorney